Filed 11/19/14  In re J.S. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT et al., Petitioners, v. THE SUPERIOR COURT OF SONOMA COUNTY, Respondent; JAMES G., Real Party in Interest. | A142662 (Sonoma County Super. Ct. Nos. 4312-DEP, 4313-DEP) |

In this dependency case, twins J.S. and K.S. (Minors) were removed from their mother's custody and placed in foster care.  Although identified as Minors' presumed father, James G. (Father) did not directly participate in the dependency proceedings until about a year and a half after their original detention when he filed a petition under Welfare and Institutions Code section 388[1] seeking visitation and objecting to any adoption plan for the children.  At the time of his section 388 petition, Father was hospitalized, having suffered a massive stroke, and was physically incapacitated with only limited ability to communicate through head and eye movements.  After a hearing,

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

the juvenile court "placed" the Minors with Father pursuant to section 361.2, subdivision (a) (section 361.2(a)), retaining jurisdiction (§ 361.2, subd. (b)(2)). The Sonoma County Human Services Department (Agency) and Minors (collectively Petitioners) challenge that order by petition for writ of mandate. They argue that section 361.2(a), which provides for preferred custodial placement with a nonoffending parent, has no application here and that Minors' "constructive" placement with Father was an abuse of discretion in these circumstances. We issued an order to show cause and stayed the placement order pending our decision. We hold that, under the circumstances presented here, the juvenile court was required to consider placement of the Minors with Father, and to grant such placement absent clear and convincing evidence of resulting detriment to the children. We find, however, that the court applied an incorrect standard in assessing detriment and remand for further consideration under the correct legal standard.

## I.    BACKGROUND

A.    *Marin County Original Petition*

In August 2012, Marin County Health and Human Services (Marin HHS) filed a petition pursuant to section 300, subdivision (b), based on conduct of the two-year-old Minors' mother (Mother).[2] At the detention hearing, the juvenile court in Marin County declared Father to be the presumed father and appointed counsel to represent him. The jurisdiction report stated that in January 2010, about two months after Minors were born, Father was arrested for choking Mother. Mother obtained a restraining order that allowed peaceful contact between the parents. Father was back in the home by the following July, and two unsubstantiated reports of domestic violence were lodged four months later. Father was arrested for domestic violence against Mother in March and June of 2011. Minors reportedly had no contact with Father after June 2011, when they were about 19 months old. In October 2012, the court sustained the petition.

---

[2] Mother filed no pleadings in this proceeding and has submitted only a letter to this court indicating her support for Father's "position and arguments."

Notice of the September 2012 jurisdiction hearing was mailed to Father's appointed counsel, but not to Father, whose address was listed as "Hospitalized" and "Hospital in Coma address currently unknown." The jurisdiction report provided an address for Father on Ocean Parkway in Bolinas. At hearings in September and October, Father's counsel said she had not been able to contact Father and asked the other parties if they had contact information for him. Mother's counsel stated during an October hearing that "[F]ather was incarcerated and . . . subsequently suffered a stroke . . . ."

B.      *Subsequent Marin County Petition*

On December 13, 2012, Marin HHS filed a subsequent petition[3] alleging that on three occasions in October and December, Mother was found asleep and unresponsive with the children in her care. The court sustained the petition as amended at hearing in January 2013. Around the same time, Minors were placed in a "foster-adopt" home in Marin County.

Notices of the detention, jurisdiction and disposition hearings regarding the subsequent petition were mailed to Father at the Bolinas address and returned undelivered. In December, Mother disclosed during a hearing that the Bolinas address was the family's former home when she, Minors and Father lived together. Mother said she thought Father was in a coma in a hospital in Marysville or Susanville. She said Father's family lived in Fairfax and provided phone numbers for Father's mother and his adult daughter. About the same time, the social worker and Father's counsel reported they had not been able to contact Father. The social worker said letters sent to the Bolinas address continued to be returned undelivered, Father's relatives were withholding information about Father's whereabouts, and a search of prison and parole records and Zabasearch.com were not fruitful.

---

[3] Marin HHS first filed an amended petition, which was superseded by the procedurally-correct subsequent petition.

3

C.    *Appointment of Guardian Ad Litem and Disposition*

The social worker said she had spoken with Father's relatives in January or February 2013.  Father's mother said she had no way of communicating with Father, although she received his mail at an address in Fairfax.  Father's brother and sister reported that Father had suffered a massive stroke, remained hospitalized, and could only communicate by blinking his eyes.  They did not disclose Father's location but expressed interest in relative placement.

In March 2013, the court granted the request of Father's counsel to appoint a guardian ad litem (GAL) for Father to facilitate contact.  In April, Father's counsel reported that she and the GAL still had not spoken with Father, and the court granted her request to formalize the GAL appointment in a written order, again to facilitate contact.  The written application for the GAL's appointment provided an accurate Healdsburg District Hospital address for Father.[4]

At the April 2013 disposition hearing, the court and parties agreed to defer any findings as to Father until after "everybody's had a chance to visit with the father."  The court ordered removal of the Minors from Mother's care and reunification services for Mother.  Mother appealed the order, and this court affirmed the removal order in early 2014.  (*In re J.S.* (Feb. 13, 2014, A138506) [nonpub. opn.].)

D.    *Return to Mother's Care and Transfer to Sonoma County*

In May 2013, Minors were informally returned to Mother's care at her residential treatment facility, where they remained until about July.  In September, a Marin HHS section 388 petition was granted to formally order their return to her care.  The case was

---

[4] Attached to Father's return are October 2014 declarations by Father's Marin County-appointed counsel and GAL discussing their efforts to contact Father during their appointments.  The record in a writ proceeding is limited to materials that were before the trial court and evidence that is a proper subject of judicial notice.  (Evid. Code, §§ 451, 452; Cal. Rules of Court, rule 8.486(b)(1)(B), (C).)  Because the declarations were not before the court below, we must disregard them.  (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1200, fn. 9; *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1181.)

4

transferred to Sonoma County in October because Mother and Minors had moved there. Upon the case's transfer, the court in Marin County relieved Father's GAL of her appointment. The GAL had reported in September that she still had not made contact with Father and that Father's relatives still had not disclosed his location. Notices of Marin HHS's section 388 petition and the October hearing on transfer were sent to Father at the Bolinas address and returned undelivered.

E.      *Sonoma County Proceedings and Supplemental Petition*

In December 2013, the Sonoma County Superior Court accepted the transfer and appointed new counsel for Mother, Father and Minors. A new GAL was appointed for Father.[5]

In February 2014, the Agency filed a section 387 supplemental petition alleging Mother had tested positive for methamphetamine and seeking Minors' removal from her custody. Notice of the detention hearing was sent only to Father's counsel and GAL; Father's personal address was listed as unknown. At the detention hearing, Father's counsel told the court, "[N]either the [GAL] nor I have heard back from him or his family." The children were detained, and the Agency ultimately recommended

---

[5] The court also conducted a paternity inquiry during this hearing. Mother reported that Father was present at Minors' birth, lived with them, and held them out as his own children, although his name was not on their birth certificates. For the first time, Mother disclosed that she was married to someone else, S.B., when Minors were born. The Agency located S.B. in Algeria. S.B. confirmed that he was married to Mother when Minors were conceived and born, but denied that he was their biological father and expressed no interest in acting as their father.

In May 2014, Minors' counsel filed a section 388 petition to change Father's status from presumed to alleged father, but did not ask that S.B. or anyone else be named the presumed father. Minors' counsel withdrew the request at a later hearing: "[G]iven the [Minors] did have some relationship with [Father] when they were very little, and although [they] may not have memory of him, they have a story of who he is, and he is, at least now, expressing an interest in having some kind of relationship with [them], and [S.B.] has no interest whatsoever, and no relationship with the [Minors], it seems to me, to be in their best interests [Father] be considered the presumed father." Mother maintained her position that Father was the presumed father, and the Agency took no position on presumed father status as between Father and S.B. The court declared Father the Minors' presumed father.

termination of services because Mother would not be able to complete her planned four-month residential treatment program before the 18-month time limit on services expired.

The combined jurisdiction and disposition report and an addendum were sent only to Father's appointed counsel and GAL; Father's address was listed as "Whereabouts unknown." The social worker reported that she had not located Father and his sister had not responded to requests for assistance. While the sister's home had been approved for placement by Marin County, Minors did not bond with her during multiple visits and remained with their former Marin County foster parents.

F. *Father's Section 388 Petition*

In May 2014, before the jurisdiction and disposition hearing on the supplemental petition was held, Father's counsel filed a section 388 petition asking the court to order visitation for Father, consider Father's relatives for placement, and rule out adoption at a possible permanent plan at the section 366.26 hearing. He wrote, "Contrary to various reports, Presumed (non offending) [Father's] whereabouts are known, and have been for about a year. . . . [¶] According to Father's Case Management Supervisor . . . Father was admitted to Healdsburg District Hospital October 30, 2012, after falling and suffering a seizure July 29, 2012 in Marysville. He has been at this facility since then. . . . [¶] . . . [¶] [I]n April 2013, [Father's] attorney filed an application for [GAL], and listed Father's address as the Healdsburg hospital, with phone number. . . . Minutes from the Dispositional Hearing in April, 2013 indicate that the Marin [GAL] would be in contact with him, but apparently that never happened. Subsequent reports from Marin and then Sonoma County continued to list Father's whereabouts as unknown, and as of April 18, 2014, no social worker had seen Father. [¶] . . . [¶] . . . [After the transfer to Sonoma County,] I was able to review the Marin file, [which I received] from County Counsel via the social worker on March 19, 2014. I discovered the Healdsburg hospital address then, and contacted [Father's case management supervisor] and Father's sister to arrange a visit. The visit did not require the sister's cooperation or attendance.

"On April 15, 2014, counsel and [GAL] for Father visited Father at the hospital; also present were his sister[,] . . . her husband, and [F]ather's brother . . . . Father was

6

able to respond to questions by moving his eyes upward to signal 'yes,' and shaking his head to signal 'no.' He confirmed that he is the father of [Minors], that he acted as the father from birth, that he let others know he was the father, and he still wants to be considered the father. He lived with Mother and [Minors] for about a year after the birth. He obviously wants to have visits with [Minors]; he became very emotional, starting to cry when the issue was raised. He indicated that he wanted his [sister or brother] to take care of [Minors]. [¶] . . . [¶] . . . Based on statements from Father's relatives, and from Father's responses, he was very involved in their lives for the first year, and developed a bond with them."

Counsel argued, "Despite the fact that Father was non offending, and apparently has never had any findings of unfitness made against him, the [Agency] in its proposed Findings and Orders contemplates setting a section 366.26 hearing, and [freeing Minors for adoption]. This is improper under basic elements of due process. . . . [¶] . . . [Father] has been ignored in this process, and, through no fault of his own, he is faced with having his children adopted. . . . The proposed findings and orders should be revised to reflect that any section 366.26 findings only consider guardianship or long term foster care. [¶] . . . Given [Minors' early bond with Father], it would be in the children's best interests to provide for visitation as well as to consider his relatives for placement. It would also be in their interests to preserve the family connection with Father and his family."

In a May 15, 2014 memorandum, the Agency described a visit with Father at the hospital as follows: "[Father] is nearly 100% disabled. He can indicate 'yes' and 'no' by raising his eyes or moving his head from side to side. [¶] . . . [Father] became very emotional when the [social worker] brought up a possible visit with his daughters. [¶] He was able to indicate that he knew the allegations of the petition, and confirmed that [Mother] drank alcohol and used a variety of drugs during the time they were together. A more in-depth discussion of their history together and the Emergency Response referrals and subsequent substantiated allegations respecting [Father's] arrests for domestic violence in Marin County were not possible given [his] limitations."

7

The Agency wrote that Minors did not remember Father but knew their father was seriously disabled. After the social worker described his condition, they expressed interest in seeing him. The social worker nevertheless wrote, "Because of his condition, demonstrations of emotion on the part of [Father] could be upsetting or frightening to [Minors]. When he expresses emotion, especially with respect to [Minors], he rolls his eyes back and moves his head spasmodically. As he is unable to speak, he makes guttural, primitive sounds, which to a four-year-old could be frightening. [¶] It may be the case that, in the first year of the children's lives, a bond developed between [Father and Minors]. However, three years have passed—three-quarters of [Minors'] lives—and their father is a stranger to them, not only due to the lack of contact, but due to his dramatically altered circumstances. This investigator recognizes that this may be through no fault of [Father], but the fact remains that would not be in either child's best interests to expose them to [Father] in his present condition. A solid therapeutic relationship needs to be established with the therapist recently contracted to work with the foster parents and minors before visitation with [Father] can be revisited."

On relative placement, the Agency reported that Father's sister had not maintained contact with the Agency's placement specialist and had made inconsistent statements regarding her interest in placement.

The court set a hearing on Father's petition.

G.    *Subsequent Hearings*

At a May 21, 2014 hearing, the court authorized therapeutic visits between Minors and Father. Hearing on Father's section 388 petition was continued to July to be heard concurrently with disposition of the Agency's supplemental petition. Because Mother submitted on the Agency's recommendation, the hearing addressed only Father's concerns.[6] The social worker, the only witness, predicted that Father's condition would not improve based on her own experience with strokes and the fact that Father's

---

[6] The court ultimately made detriment findings as to Mother and S.B., removed the children from Mother's care, and denied services to both.

8

condition had not improved in three years. She testified that the persons Father had proposed as caregivers were not appropriate for placement. Moreover, "until [Father's counsel] contacted him, [Father] didn't come forward" with arrangements for Minors' care. The court asked whether the Agency had asked Father about appointing a guardian for the Minors and the social worker replied, "No, not directly." Before the disposition hearing's conclusion, Father informed the court that he consented to Minors' remaining in the care of their current foster parents.[7]

Most of the hearing consisted of argument. The court said it had "an extraordinary amount of difficulty with what I see as basically taking the easy route because this gentleman is disabled. . . . What efforts have been made to assist a disabled parent, who is a non-offending parent in this situation . . . ?" Counsel for the Agency disagreed: "[I]t's not that he's disabled; it's that he's not capable of caring for them. He can't get up out of bed. He can't prepare meals for them. He has not, in two years, arranged for anyone else to provide for the care of the children." Minors' counsel similarly argued, "It just seems kind of self-evident [Minors] can't be placed with their father today. And that's the basis of saying it would be detrimental to return them to his care."

Father and Mother both argued that the court could not find detriment based on Father's physical disability alone. Father's GAL argued, "[T]o say he didn't arrange for the care of his children may be . . . hyper-technical, because he was in a coma . . . . He did have people in mind he felt would be able to step forward, and I think he is able to communicate what he thinks can be done in terms of care of the children." Mother argued that insufficient inquiry had been made to determine whether Father could arrange for Minors' care. Father's counsel argued, "Dad is able to communicate and could assist in making decisions about these children."

---

[7] On July 17, 2014, Father's GAL signed a "declaration" (not sworn under penalty of perjury) stating that Father "authorized that the minors shall live in the home of [the foster parents], pending further proceedings in this juvenile dependency matter[,] [¶] . . . [and] has authorized that [the foster parents] shall have the authority to make medical, dental and educational decisions for the minors while the minors are residing in the home of [the foster parents]."

The court noted Father's constitutional rights were at issue and asked if any court ever had made a detriment finding as to Father. Counsel for both the Agency and Minors said the detriment finding could be made based on the fact that Minors "cannot be safely placed in his care today." The Agency argued that section 361.2(a), which requires a detriment finding, did not apply because Father did not request custody at the initial disposition hearing in April 2013. It further argued that ability to arrange for the care of dependent minors was legally relevant only for custodial parents at jurisdiction or the first disposition stage of a dependency proceeding, never for noncustodial parents. Father argued section 361.2(a) could be applied at later stages of the dependency proceeding.

The court made comments suggesting that the Agency's efforts to locate Father were inadequate: "efforts for Father have basically been trying to find a guy who was about eleven miles away from the courthouse"; "despite the fact that Marin County knew where he was, they were too daggone lazy or too cheap to put three gallons of gas into a car and drive up to Healdsburg."

At the conclusion of the July 1, 2014 hearing, the court tentatively found insufficient evidence of detriment if custody were granted to Father. "[W]hile the Court does have concerns regarding Father's ongoing ability to make those decisions, my concerns are more humanistic than they are evidentiary. I simply have not received clear-and-convincing evidence, at this time, to give rise to the Court making a detriment finding. . . . [¶] I'm not happy with Father's domestic-violence background, but as I think everyone has acknowledged, Father's physical limitations, quite frankly with the evidence that I have right now, take that off the table." After briefing and additional oral argument, the court stood by its previous ruling.

The court placed Minors with Father, stating that "Father's designated someone. [¶] . . . [¶] . . . He's the one who has the right to make that decision, and he has said he wishes the children to remain in their current placements." Consistent with section 361.2, subdivision (b)(2), the court ruled, " 'Father shall assume custody subject to jurisdiction of the Court, and a home visit shall be conducted within three months of today's date.' " The matter was continued for " 'Family Maintenance Review.' "

10

The Agency and Minors appealed the order (appeal No. A142777) and filed this action, a petition for a writ of mandate to vacate the order and a writ of supersedeas to stay the order pending a decision in appeal No. A142777. We issued an order to show cause on this writ proceeding, stayed the juvenile court's order pending finality of the opinion in this proceeding, denied the petition for writ of supersedeas as moot, and dismissed appeal No. A142777.

## II.   DISCUSSION

We begin by examining the extent of Father's constitutional right to custody of Minors in the procedural context of this case.

### A.   *Father's Constitutional Right to Custody*

"Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations [of parental unfitness] by at least clear and convincing evidence." (*Santosky v. Kramer* (1982) 455 U.S. 745, 747–748 (*Santosky*); see also *Stanley v. Illinois* (1972) 405 U.S. 645, 658 [parents entitled to hearing on parental fitness before children are removed from their custody].) Our Supreme Court has held that the California dependency scheme complies with due process as to custodial parents because it ensures parental rights will not be terminated absent a finding of parental unfitness by clear and convincing evidence at some point in the dependency proceeding. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253, 256 (*Cynthia D.*) [constitutional to allow termination of parental rights at section 366.26 hearing on a preponderance of evidence standard of proof]; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 308–310 (*Marilyn H.*) [constitutional to exclude a return to a parent's custody as a possible permanent plan at section 366.26 hearing].)[8] Section 361.2 is not a removal statute, and here we do not deal with

_____

[8] Although the holding of *Cynthia D.* is not expressly limited to custodial parents—i.e., parents whose children are *removed* from their custody during a dependency proceeding—the restriction is implicit. The Supreme Court explained that procedural safeguards render the dependency scheme constitutional under *Santosky*, and identified those safeguards as (1) the *removal* finding (that the child would face a substantial risk of harm if left in parental custody), which is made by clear and

11

termination of parental rights but rather with the potential denial of placement with a noncustodial parent. "However, the trial court's decision at the dispositional stage is critical to all further proceedings. Should the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.)

Father also has a due process right to adequate notice and an opportunity to be heard before his constitutionally protected interest in parenting his children may be infringed. (*In re B.G.* (1974) 11 Cal.3d 679, 688–689.) We have recently held that, as a matter of constitutional law, "a court may not terminate a nonoffending, noncustodial . . . presumed father's parental rights" even at a late stage in the dependency proceedings "without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental." (*In re T.G.* (2013) 215 Cal.App.4th 1, 20, fn. omitted [noncustodial father who appeared prior to jurisdictional hearing, but who was unable to obtain presumed father status until after permanency planning]; see also *In re Z.K.* (2011) 201 Cal.App.4th 51, 56–58, 65–66 (*Z.K.*) [noncustodial mother who did not receive notice of dependency case until shortly before § 366.26 hearing]; *In re Frank R.* (2011) 192 Cal.App.4th 532, 534–536, 539 [noncustodial presumed father who never sought custody]; *In re Gladys L.* (2006) 141 Cal.App.4th 845, 847–849 [noncustodial father who had disappeared for three years during dependency proceeding].)

B. *Section 361.2*

"Section 361.2 establishes the procedures a court must follow for placing a dependent child following removal from the custodial parent pursuant to section 361.

---

convincing evidence, (2) the *jurisdictional* finding, which the Court assumes is made with respect to the same parent, and (3) subsequent findings at status review hearings that *return* of the child to the parent's custody would be detrimental to the child. (*Cynthia D., supra,* 5 Cal.4th at pp. 254–256; see also *Marilyn H., supra,* 5 Cal.4th at p. 308.) These findings are all made with respect to the custodial parent. *Santosky* also involved custodial biological parents whose children were removed from their care on allegations of neglect in a dependency proceeding. (*Santosky, supra,* 455 U.S. at p. 751; see also *Stanley v. Illinois, supra,* 405 U.S. at pp. 646–649 [custodial biological father's children removed from his care upon death of biological mother without finding of his unfitness].)

[Citation.]  Subdivision (a) of section 361.2 provides that when a court orders removal of a minor under section 361, the court 'shall first determine' whether there is a parent who wants to assume custody who was not residing with the minor at the time the events that brought the minor within the provisions of section 300 occurred.  (§ 361.2, subd. (a).)  If that parent requests custody, the court 'shall place' the child with the parent unless 'it finds that placement with that parent would be detrimental to the minor.'  (*Ibid.*)  If the court places the child with that parent it may either:  (1) order that the parent become legal and physical custodian of the child and terminate jurisdiction; or (2) order that the parent assume custody subject to the supervision of the juvenile court with services provided to either one or both of the parents.  (§ 361.2, subd. (b).)  The court is specifically required to make either written or oral findings setting forth its basis for its determinations under subdivisions (a) and (b).  (§ 361.2, subd. (c).)  If the minor is not placed with a noncustodial parent requesting custody, the court orders 'the care, custody, control, and conduct of the minor to be under the supervision of the probation officer' who may place the minor in any of several placements including a licensed foster family home.  ([Former] § 361.2, subd. (d)(4); [citation].)"  (*In re Marquis D., supra,* 38 Cal.App.4th at pp. 1820–1821, fns. omitted; § 361.2, subd. (e)(4).)  To comport with due process requirements, a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence, even though the statute does not expressly so provide.  (*Id.* at p. 1829.)

"Thus, 'a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be "detrimental to the safety, protection, or physical or emotional well-being of the child." '  (*In re Isayah C.* [(2004)] 118 Cal.App.4th [684,] 697.)  It is not the nonoffending parent's burden to show that she is capable of caring for her child.  Rather, it is the party opposing placement who has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody."  (*Z.K., supra,* 201 Cal.App.4th at p. 70.)

13

Petitioners contend that section 361.2(a) is inapplicable for several reasons. First, the Agency (but not Minors) argue that section 361.2(a) does not apply after disposition or the first hearing where a child is removed from a custodial parent. Second, Petitioners argue that section 361.2(a) does not apply unless the noncustodial parent requests custody, which Father did not do. Third, section 361.2(a) applies only to a noncustodial parent's request for custody, not to a request for an opportunity to arrange care for the child with others.

        1.      *Applying Section 361.2(a) After Initial Removal*

Our Supreme Court has held that section 361.2(a) by its plain language applies only at disposition: "Nothing in this statute suggests that custody must be immediately awarded to a noncustodial parent regardless of when in the dependency process the parent comes forward. Rather, its language suggests that the statute is applicable only at the time the child is first removed from the custodial parent or guardian's home." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453; see *id.* at p. 439.) However, several appellate courts (including this one) have applied the section 361.2 detriment standard to requests for custody made by a noncustodial parent *after* the disposition phase of the dependency proceedings. (*In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1254; see also *In re T.G., supra,* 215 Cal.App.4th at p. 20; *Z.K., supra,* 201 Cal.App.4th at p. 71 ["issue of a return to parental custody can be raised late in the dependency proceeding . . . by means of a section 388 petition to change, modify, or set aside a previous order based on a change in circumstances or new evidence" (italics omitted)]; *In re Frank R., supra,* 192 Cal.App.4th at p. 538; *In re Gladys L., supra,* 141 Cal.App.4th at pp. 848–849.) The court in *In re Suhey G.* (2013) 221 Cal.App.4th 732, 744–745, similarly held that a presumed father who did not receive notice of the dependency proceeding due to the agency's negligence (a due process violation) could invoke section 361.2(a) even though the disposition hearing had already taken place. Relying in part on *Z.K.* and *Suhey G.*, the court in *Jonathan P.* also held that section 361.2(a) may apply after the disposition stage of a dependency case. (*Jonathan P.,* at pp. 1254–1256.)

14

Several courts have also held that section 361.2(a)'s "procedures" apply at postdisposition review hearings and at hearings on section 387 supplemental petitions by dint of California Rules of Court. (See *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450–1451 [citing former rule 1460(c)(2)(h)]; *In re Suhey G., supra,* 221 Cal.App.4th at pp. 743 & fn. 22, 745 & fn. 25 [citing rules 5.710(b)(2), 5.565(e)(2), 5.695(a)(7)]; *In re Jonathan P., supra,* 226 Cal.App.4th at 1254 & fn. 11 [citing rules 5.708(k), 5.710(b)(2)]; see also *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1283–1284 & fn. 10 [in dicta discussing rules 5.708(k), 5.710(b)(2), 5.715(b)(3), 5.720(b)(2)]].)

Finally, Father notes that during the initial disposition hearing in April 2013, the court in this case expressly *reserved* issues regarding Father because he had not been located. Those issues had not been revisited by the time Father actually appeared in the case and sought custody. Thus, the court's application of section 361.2(a) at the July 2014 hearing can be viewed as simply a delayed stage, as to Father, of the original disposition hearing, consistent with the Supreme Court's construction of the statute in *In re Zacharia D., supra,* 6 Cal.4th at pages 439, 453.

We conclude the court properly applied section 361.2(a) under these circumstances, despite the late stage of the proceedings.

2.     *Father's Request for "Custody"*

Section 361.2(a) requires the court, upon removal of a child pursuant to section 361, to determine if there is a noncustodial parent "who desires to assume *custody* of the child. If that parent requests *custody*, the court shall *place* the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.) Petitioners argue that section 361.2(a) does not apply because Father never requested custody of Minors, a statutory prerequisite to considering placement with a noncustodial parent. (See § 361.2(a) ["[i]f that parent requests custody"]; *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1854, superseded by statute on another ground as stated in *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233, fn. 7.) They insist that "custody" means a request for physical custody, not an opportunity to arrange care for the child with others,

15

and they contend that Father's condition renders him physically incapable of taking physical custody and providing care for the Minors.

First, Father correctly argues the Agency forfeited the first argument by failing to raise it below. Although the Agency argued section 361.2(a) did not apply because Father did not request custody *at the disposition hearing*, it did not argue that Father *never* requested custody of Minors. That is, the Agency never argued that, assuming that section 361.2(a) may be applied at the last review hearing, Father is nevertheless ineligible because his request to arrange for Minors' placement did not amount to a request for "custody" within the meaning of the statute. We generally do not address arguments that are raised for the first time on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.)

In any event, the argument lacks merit. The Fourth District Court of Appeal considered the meanings of "custody" and "place" in section 361.2(a). (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1128, 1130 (*Austin P.*).) Based on definitions of "custody" in the Welfare and Institutions Code, the Family Code, the California Code of Regulations, and Black's Law Dictionary, the *Austin P.* court concluded that word connotes "the parent has the right to make decisions pertaining to the child, and has legal possession of the child."[9] (*Id.* at pp. 1130–1131; see also *In re A.A.* (2012)

_____

[9] In *Austin P.*, a noncustodial parent argued that the juvenile court was required to terminate dependency jurisdiction if it found no detriment under section 361.2(a) and the court could not simply "place" the child with the parent and continue dependency jurisdiction. (*Austin P., supra,* 118 Cal.App.4th at pp. 1128–1129.) In this context, the Court of Appeal held that a "request for custody" pursuant to section 361.2(a) "means the parent is asking for the exclusive right to control decisions about the child *and to have possession of the child*—i.e., the parent is seeking sole legal and physical custody," whereas "place" means "a temporary arrangement that necessarily involves the ongoing supervision of the juvenile court." (*Austin P.,* at p. 1131, italics added.) If the juvenile court decides to place the child with the noncustodial parent under section 361.2(a), it then separately decides whether to grant permanent custody to the parent under section 361.2(b) and terminate jurisdiction—termination of jurisdiction does not automatically follow. (*Austin P.,* at p. 1132.) Although the quoted language, standing alone, implies that "custody" includes physical custody and does not mean legal custody alone, the *Austin P.* court's earlier discussion of the meaning of "custody" clearly

16

203 Cal.App.4th 597, 609–610 [parent with whom child does not reside because of a family law custody order still "is presumptively entitled to custody because he or she has not been previously found to pose a risk of harm to the child"].) We agree that "custody" in section 361.2(a) therefore includes legal custody, i.e., the power to make decisions about a child's upbringing, including where that child will live. In his section 388 petition, Father asked for regular visitation, consideration of placement with his relatives, and elimination of adoption as a possible permanent plan. Father's section 388 petition states that, when interviewed in the hospital, Father "indicated that he wanted his [sister or brother] to take care of [Minors]." Although relative placement usually is governed by section 361.3, in the context of this case the court reasonably construed Father's request for relative placement as a request that he be allowed to exercise legal custody over Minors by making arrangements for their care with suitable caretakers.

3. *Father's Disability and Placement*

Consistent with the broad *Austin P.* definition of "custody" (albeit based on a different rationale), courts have held that the mere fact of *incarceration* does not preclude section 361.2(a) "placement" with incarcerated noncustodial parents if they are able to arrange care for the child. (*In re Isayah C., supra,* 118 Cal.App.4th 684, 696, 699–700 (*Isayah C.*);[10] *In re V.F.* (2007) 157 Cal.App.4th 962, 971, superseded on other grounds by statute as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58; *In re A.A., supra,* 203 Cal.App.4th at pp. 606–607; *In re Noe F.* (2013) 213 Cal.App.4th 358, 368; cf. *In re John M.* (2013) 217 Cal.App.4th 410, 415, 417, 424 [rule does not apply where noncustodial father was incarcerated for domestic violence that was a basis for

encompassed a broader understanding of the term. Because the noncustodial parent in *Austin P.* sought *both* legal and physical custody, it was not necessary for the reviewing court to clearly distinguish between the two.

[10] *In re A.O.* (2010) 185 Cal.App.4th 103 (*A.O.*), cited by the Agency, is factually similar to *Isayah C.* but reaches an apparently inconsistent result. (*A.O.,* at pp. 105–106.) The *A.O.* court, however, considered only whether section 300, subdivision (g) allowed an incarcerated noncustodial parent to arrange for the child's care during his incarceration under section 361.2(a), and did not consider constitutional issues or the meaning of "custody" in section 361.2(a). (*A.O.,* at pp. 109–112.)

dependency jurisdiction].) The *Isayah C.* court reasoned that "the applicable statutes must be read and applied in the appropriate constitutional context. . . . '[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. [Citations.]' ([*Santosky*, *supra*,] 455 U.S. [at p.] 753.) Thus, the constitutional right of parents *to make decisions regarding their children's upbringing* precludes the state from intervening, in the absence of clear and convincing evidence of a need to protect the child from severe neglect or physical abuse. [Citations.]" (*Isayah C.*, at p. 696, italics added & parallel citation omitted.) The court also noted that section 300, subdivision (g) provides that initial jurisdiction cannot be taken on the sole ground of parents' incarceration if the parent is able to arrange for care of their children.[11] (*Isayah C.*, at pp. 696–697, 700.)

We find no principled way to distinguish the situation of an incarcerated noncustodial parent from that of a hospitalized or institutionalized noncustodial parent with respect to the parent's ability to exercise legal custody of a child.[12] The capacity of an institutionalized parent to assume actual physical custody at some future date may be relevant to the court's determination of *detriment*, just as the length of incarceration is relevant to the detriment analysis in section 361.2(a) cases with an incarcerated parent. (*In re A.A., supra,* 203 Cal.App.4th at p. 606.) However, the parent's inability to take

[11] A split in authority exists as to whether a noncustodial parent must also be a nonoffending parent in order to be entitled to placement under section 361.2(a). (Compare *In re V.F., supra,* 157 Cal.App.4th at pp. 965–966 with *In re John M., supra,* 217 Cal.App.4th at pp. 421–423; see also *In re D'Anthony D.* (2014) 230 Cal.App.4th 292.) In this writ proceeding, the parties have not made an issue of Father's status as an offending or nonoffending parent, although there is a documented history of Father's domestic violence against Mother. We follow the guidance of the Seiser and Kumli treatise, which recommends ignoring the distinction and apply section 361.2(a) "in cases involving a noncustodial presumed parent based on a thorough assessment of detriment." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2014) § 2.127[1][a], p. 2-396 (Seiser & Kumli).)

[12] We note that section 300, subdivision (g), which authorizes jurisdiction on the ground of incarceration only if an incarcerated parent cannot arrange for the children's care, also applies to institutionalized parents.

18

*immediate* physical custody does not justify a refusal to apply the section 361.2(a) standard in the first instance.

The evidence is clear that Father's medical condition has rendered him physically incapable of providing direct care and support for his children, and he is unable to assume physical custody of the minors. Father has been hospitalized since October 2012, and is "nearly 100% disabled." Nothing in the record indicates that recovery is probable, or even possible. The juvenile court, however, rejected a finding of detriment based on physical disability, and found that there was no evidence that his impairment would "prevent him from parenting these children."[13]

Father's physical disability does not automatically disqualify him from obtaining placement under section 361.2(a). "[I]f a person has a physical handicap it is impermissible for the court simply to rely on that condition as prima facie evidence of the person's unfitness as a parent or of probable detriment to the child; rather, in all cases the court must view the handicapped person as an individual and the family as a whole. To achieve this, the court should inquire into the person's actual and potential physical capabilities, learn how he or she has adapted to the disability and manages its problems, consider how the other members of the household have adjusted thereto, and take into account the special contributions the person may make to the family despite—or even because of—the handicap." (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 736 & fn. 8 [analogizing marital dissolution child custody issues to dependency scheme].) "We do not mean, of course, that the health or physical condition of the parents may not be taken

---

[13] The court expressed concern that a finding of detriment based on physical disability alone would violate the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.). As Petitioners note, a parent may not invoke disability as an affirmative defense in a dependency proceeding because that proceeding is for the benefit of the child and is not a government service for the parent. (*In re Anthony P.* (2000) 84 Cal.App.4th 1112, 1115–1116; Seiser & Kumli, *supra,* § 2.129[12], pp. 2-460 to 2-461.) Nevertheless, a court must still take a parent's disabilities into account in making other determinations under the dependency scheme, such as whether reasonable reunification services have been provided. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1139, disapproved on other grounds by *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.)

19

into account . . . . [W]henever it is raised[, however,] . . . it is essential that the court weigh the matter with an informed and open mind." (*Id.* at p. 736.) "[I]t is vitally important that the court have as much information as possible regarding [the parent's] alleged . . . disorder and the extent to which, if at all, it will affect his [or her] ability to care for [the minor]." (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1151 [marital dissolution child custody case].) In other words, Father's medical condition is among the factors that the court may legitimately consider in assessing detriment to the children under section 361.2(a).

C.      *Other Legal Arguments*

Petitioners argue the court "exceeded its jurisdiction by 'constructively' placing the children with their father, but leaving them in the physical custody of their licensed foster family." They argue the court's jurisdiction is limited by statute (*In re Silvia R.* (2008) 159 Cal.App.4th 337, 345–346), and the statutory scheme limits the court's dispositional options in the circumstances of this case to those set forth in section 361.2, subdivision (b). Those options, Petitioners contend, do not include a grant of custody to Father with the understanding that Minors would stay in the care of the former foster parents. They rely in part on cases holding that a court lacks jurisdiction to remove a child from parental custody and then immediately place the child with the parent under agency supervision, a procedure not authorized by the statutory scheme. (See *In re Damonte A.* (1997) 57 Cal.App.4th 894, 899–900; *In re Andres G.* (1998) 64 Cal.App.4th 476, 481.)

Section 361.2(a) requires the court to "place" a dependent minor with the noncustodial parent unless it finds detriment. We have concluded that "placement" must be construed so as to allow Father to arrange for care of Minors by suitable caretakers in order to comport with due process requirements. We emphasize, however, that mere passive consent or acquiescence to the recommendations of others (i.e., Father's counsel or GAL, or the social worker) does not amount to an exercise of custody that can outweigh Minors' interest in permanence and stability. The fundamental issue in proceedings under section 361.2 is whether a parent has the potential to provide a safe

20

and secure permanent home for the minor.  (*In re Erika W.* (1994) 28 Cal.App.4th 470, 476–477.)  The juvenile court here may consider in assessing detriment to Minors the extent of Father's ability, given his physical restrictions, to receive and convey sufficient information to make informed decisions about Minors' upbringing.

Section 361.2, subdivision (b)(2) permits the court, once it has placed a child with a noncustodial parent under section 361.2(a), to "[o]rder that the parent assume custody subject to the jurisdiction of the juvenile court . . . ."  Here, the court granted Father legal custody of Minors subject to the continuing jurisdiction of the dependency court.  We perceive no conflict with the statutory scheme.

In sum, we conclude that Father was entitled to placement of Minors in his care (subject, in the court's discretion, to continued court supervision under § 361.2, subd. (b)) unless the court found by clear and convincing evidence that the placement would be "detrimental to the safety, protection, or physical and emotional well-being of the child." (§ 361.2(a).)

D.      *The Placement Order*

On appeal of a section 361.2(a) detriment finding, "[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment.  [Citations.]  Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.  [Citation.]" (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).)  Petitioners contend that, even assuming applicability of section 361.2(a), the juvenile court applied an incorrect standard in assessing detriment, and consequently abused its discretion in placing Minors with Father under these circumstances.  We therefore first review the juvenile court's finding of no detriment to determine if the correct legal standard was applied.  "[A] court abuses its discretion when it applies incorrect legal standards.  [Citation.]" (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 289.)

21

Petitioners argue that they did not need to show wrongdoing by Father, the noncustodial parent, in order to establish detriment under section 361.2(a). We agree. Section 361.2(a) "does not mandate placement with the noncustodial parent absent a judicial examination of the circumstances of [both] the parent and child." (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1506.) "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.]" (*Marilyn H.*, *supra*, 5 Cal.4th at p. 307.)

Even dependency *jurisdiction* is premised on the conduct or omission of a parent that, regardless of personal fault, causes harm or a risk of harm to the child. (§ 300; Seiser & Kumli, *supra,* § 2.84[1], p. 2-251.)[14] "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]" (*In re Diamond H., supra,* 82 Cal.App.4th at p. 1136.) Thus, in *In re Daniel S.*, the court affirmed a jurisdiction order even though the custodial parent was so mentally disabled that she could not comprehend notice of the proceedings. (*In re Daniel S.* (2004) 115 Cal.App.4th 903, 908–909, 916.) Once jurisdiction is established, dependent children may be removed from a parent's custody only on a similar showing of harm or risk of harm to the child arising from parental conduct or omission, regardless of personal fault, but with a clear and convincing evidence standard of proof. (§ 361, subd. (c).)

Parental fault or wrongdoing similarly is not a prerequisite for a detriment finding under section 361.2(a). "California's dependency scheme no longer uses the term ' "parental unfitness," ' but instead requires the juvenile court make a finding that awarding custody of a dependent child to a parent would be detrimental to the child.

---

[14] A child may be declared a dependent if the actions of *either* parent bring the child within the statutory definitions of dependency. (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["a jurisdictional finding good against one parent is good against both"].)

[Citations.]" (*Z.K., supra,* 201 Cal.App.4th at p. 65; see *Cynthia D., supra,* 5 Cal.4th at pp. 254–255 [constitutional standard satisfied by jurisdiction and removal findings of substantial risk of harm to child and subsequent findings that return would create " 'substantial risk of detriment to the physical or emotional well-being of the minor' "]; see also *In re B.G., supra,* 11 Cal.3d at pp. 694–695.)  Although a jurisdictional finding is predicated on parental conduct, "a detriment finding for purposes of deciding placement with a noncustodial, nonoffending parent need not be." (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1425.)

Father argues that a finding of parental unfitness remains a requirement under section 361.2 to meet the constitutional due process requirements of *Santosky*: "[U]ntil the State proves parental *unfitness*, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." (*Santosky, supra,* 455 U.S. at p. 760, fn. omitted & italics added.)  He notes that the removal standards of section 361, subdivision (c)(1), likewise make no reference to parental fitness—requiring evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home"—but that the California dependency scheme satisfies due process requirements because a finding of unfitness is required, by clear and convincing evidence, before parental rights may be terminated.  (See *Cynthia D., supra,* 5 Cal.4th at p. 256.)  "At issue in both *Santosky* and *Cynthia D.*[, however,] was the quantum of proof required for termination of parental rights, which indisputably are fundamental in nature.  (*Santosky, supra,* 455 U.S. at pp. 758–759, 769.)" (*Renee J. v. Superior Court, supra,* 26 Cal.4th at p. 750, parallel citation omitted.)

Section 361 addresses the substantial threshold required to *remove* a child from the home of a custodial parent.  By its terms, it applies when a child is "taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated . . . ." (§ 361, subd. (c).)  In this context, parental "unfitness" means only "parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent.

23

[Citation.]" (*In re Diamond H., supra,* 82 Cal.App.4th at p. 1136.) Section 361 establishes the basis for judicial intervention in custodial care of the child. Removal under that statute places both legal and physical custody, for all practical purposes, with the probation officer and creates broad authority for "the juvenile court to make any and all reasonable orders 'for the care, supervision, custody, conduct, maintenance, and support of the minor . . . .' " (*In re Robert A.* (1992) 4 Cal.App.4th 174, 184; § 362, subd. (a).)

As we have noted, section 361.2 is not a removal statute. (See *Luke M., supra,* 107 Cal.App.4th at p. 1422.) By its terms, section 361 applies to a custodial parent, while placement after removal with a noncustodial parent is assessed under section 361.2. (See *In re V.F., supra,* 157 Cal.App.4th at pp. 969–970.) "Once removal from the custodial parent under section 361 has occurred, section 361.2 requires the court to evaluate placement with the noncustodial parent based on detriment[, not unfitness]."[15] (*Luke M.,* at p. 1423.) We find nothing in that focus that would deprive Father of his constitutional rights as a parent. "Due process is a flexible concept which depends upon the circumstances and a balancing of various factors. [Citation.]" (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.) In its role as *parens patriae*, the state has a "weighty interest[] in assuring the proper care and safety of children in the dependency system" (*Renee J. v. Superior Court, supra,* 26 Cal.4th at p. 750), an interest recognized by the United States Supreme Court (*Santosky, supra,* 455 U.S. at pp. 766–767). While a "parent's interest in the companionship, care, custody and management of his children is a compelling one," children also have "compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. [Citation.] The interests of the parent and the child, therefore, must be balanced." (*Marilyn H., supra,* 5 Cal.4th at p. 306.) "A detriment evaluation [under 361.2] requires that the court weigh all relevant factors to determine if

_____

[15] Petitioners suggest that this is a "best interest" standard. It is not. A showing of physical or emotional detriment is required.

24

the child will suffer net harm. [Citation.]" (*Luke M.,* at p. 1425.) Constitutional due process requirements are satisfied by a detriment finding made by clear and convincing evidence before denying placement under section 361.2 to a noncustodial parent. (See *In re Marquis D., supra,* 38 Cal.App.4th at p. 1829.)

Petitioners argue that the court here focused entirely on Father's circumstances and parental "fitness," rather than on harm to the Minors. Petitioners insist that there was substantial evidence of detriment in this case because Father was almost completely physically incapacitated for an indefinite period; Minors had no relationship with Father since they were about 19 months old and Minors had no memory of him;[16] Father's condition might frighten Minors; the social worker was unable to conduct an in-depth conversation with Father; and Father made no independent and appropriate arrangements for Minors' care, but only requested Minors be placed with relatives who had not demonstrated suitability for placement. In addition, Petitioners note that Father had made no effort to contact or support Minors prior to his incapacity and that a constructive "placement" with Father jeopardizes Minors' stability in an existing foster care placement and deprives Minors of the financial support otherwise available to them under Aid to Families with Dependent Children-Foster Care (§ 11400, subd. (a).)[17] Petitioners contend that the court's order leaves Minors "in limbo," without real reunification with either parent, and with no permanent plan within the timeframes contemplated by the statutory dependency scheme. "[T]he Legislature has directed the juvenile court to 'give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of

---

[16] As noted *ante*, the social worker reported that Minors knew their father was seriously disabled and said they would like to see him. Minors' counsel similarly told the court that Minors "have a story of who [Father] is."

[17] Father cites alternative sources of funding that might be available to help support Minors in their current placement. Petitioners did not raise this argument below, and the record is not developed on the funding issue. Since we remand for further hearing, the parties and the court will have an opportunity to address this issue further.

prolonged temporary placements.'  (§ 352, subd. (a).)"  (*Marilyn H., supra,* 5 Cal.4th at p. 308.)

We agree that these are all relevant factors that the court must consider in determining if placement with Father would be detrimental to the Minors.  We normally presume that the court knows and applies the correct statutory and case law and recognizes those facts which properly may be considered in the judicial decisionmaking process.  (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  In this case, however, the record is not at all clear that the court actually did so.  At the July 2014 hearing the court discussed almost exclusively Father's disability and stated "I have to make a finding of detriment based *on something because of Father*," indicating that the court erroneously believed that it was required to make a determination of parental fault, rather than assessing the effect that placement with Father would have on the safety, protection and physical and emotional well-being of the Minors.  We cannot be satisfied on this record that the juvenile court adequately explored whether placing Minors with Father would be detrimental to them within the meaning of section 361.2(a).  Since we cannot confidently say that the court applied the correct legal standard in this instance, we will remand for further hearing.[18]

### III.   DISPOSITION

Let a peremptory writ of mandate issue directing respondent juvenile court to vacate its order placing Minors with Father, and to conduct further proceedings to reconsider the question of placement in accordance with the views expressed in this

---

[18] Mother asks us to take judicial notice of a petition she recently filed in the court below, seeking return of the Minors to her custody.  Father asks us to take judicial notice of the outcome of the juvenile court's status review under section 361.2, subdivision (b)(2).  Although not accompanied by a request for judicial notice, Minors' counsel seeks to advise us of an order entered by the court suspending Minors' visitation with Father.  We decline to take notice of any of these matters.  We generally do not consider evidence that was not before the trial court when the order under review was issued, and no unusual circumstances justify doing so in this case.  (See *In re Zeth S.* (2003) 31 Cal.4th 396, 400.)

opinion.  This opinion shall become final as to this court 15 days after its filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Our temporary stay shall dissolve upon finality of the opinion as to this court.

_____

BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

SIMONS, J.